23343. Thank you. Do I have to push something to turn these on? Good morning, your honors. Gene Myhre for the plaintiff appellant in this case. I'm from the law firm of Julian, Myhre, Singler & Goldstein. You're going to have to speak up a little bit. Okay, I'll try. Can you hear me now? Yes. Thank you very much. At the outset, I'd like to just say that this case is almost seven years old. And we're here today on an issue related to feeding standards with respect to a motion to dismiss. There have been three decisions in the lower court, all of which plaintiffs alleged are in error for various reasons. This is a Title VI case. This is a case involving the use of federal funds that go to the school system in New York. And these kinds of federal funds under Title I and other federal laws are common throughout all of this country with respect to federal support of education. The Title VI was passed as part of the Civil Rights Act of 1964 to ensure that federal money was not going to be spent to support discrimination and also to make sure that people who complained about discrimination were not left high and dry with no remedy. My colleague here from the Justice Department will discuss some of the history of the law on this. But first of all, when we brought this case, it was based on confidentiality. The allegations against my client came up right after she brought to the attention of a number of people in the hierarchy that there was, she believed, racial discrimination going on with the allocation of sports teams. But is that accurate? I mean, the initial complaint against her was months in advance. The subsequent complaint was still prior to her sending the email about these disparities. There were two, from what they tell me, which we don't necessarily agree with, there was a complaint lodged in May, which was closed because it was anonymous, and then one in December, in which the people who came forward and didn't remain anonymous allegedly provided information about, I think, something like a May Day bake sale or something of that sort. Her protest was in January, and a few weeks later, the parents protested. Same issue, raising the issue of separate is unequal with respect to the allocation of sports teams between dominantly black and brown high schools. I'm sorry, I just want to focus in. I guess my question was in response to what I thought was your statement that the investigation was in response to her protest of these, and so I'm just asking the question because both complaints against her preceded her January email about this. That's the thing I'm asking. We say that those complaints are a pretext for opening the investigation, that they would not have opened them up. They sat on them for a long time. They obviously didn't believe they were serious enough. I guess, I'm sorry. They started before her protest. Now, I don't know if you're, like, the first complaint is in, I guess, May of 2016. The follow-up complaint is in December. Her email is in January of 2017. So I don't understand how you're saying, perhaps you're saying some of the actions they took in furtherance of those protests after January 2017. Maybe that's your argument, although that's not what you said. I don't understand how things that precede her protest can be claimed to be. What I'm saying, Your Honor, and I think this happens in many kinds of discrimination and retaliation claims, is that when somebody engages in protected activity, management might want to look back to see if there is something that they could use to investigate. That's what we're saying, and that's what we believe the evidence would show. The allegations, and then, of course, even before this investigation takes place, the so-called confidential complainers admit they have no evidence to support the investigation. This is also in March, and the investigation doesn't go forward until April. So I think the preceding, when you look at it all together, you see that there really was no basis for any kind of investigation whatsoever. Did the district court even address this particular issue? No. So it dismissed on these other legal cases? Yes. At the time of the first opinion in this case, the only issue the judge said was he thought potentially viable was Title VI, but we had alleged only that the federal monies came to the New York District. In citing Verdi and the theories in Verdi, the court said this is not an employment discrimination case. This is a retaliation case, but you have to connect the funding that the school gets to the sports teams or have some kind. You just can't have bare conclusions. So we submitted a proposed amended complaint, which showed that her school got these kinds of monies for the school, and then he then said, but you need to have a logical nexus. And logical nexus only applies in that situation where you're looking at if you're alleging employment discrimination, which she was not. She wasn't alleging any employment discrimination to her. She was alleging discrimination in allocation of benefits to her students. So that segues well into, I think, the United States argument. Exactly. Yes, I did, but I think I'm over it. I thank you, Your Honor, for listening, and I hope I clarified the situation. Thank you. Good morning, and may it please the court, Noah Bocat-Lindell for the United States. Welcome back to the State of the Circuit. Thank you, Judge Lafayette. Everyone in this case agrees that if DOE had retaliated against Ms. Bloomberg by calling the police to her house or by referring her to Child Protective Services, Section 604 would not apply. But under the district court's rule, the fact that DOE instead used its status as Ms. Bloomberg's employer to engage in the alleged retaliation bars her Title VI claim. This rule is wrong for three reasons. First, it focuses on the retaliatory act rather than on the underlying protected activity that defines this as a Title VI claim. Second, it ignores the broader context of the Civil Rights Act and of Section 604's role within it. And third, it would leave many people without any protection at all under either Title VI or Title VII, which would deter people from coming forward to expose discrimination. I can take those points one at a time. First, on the retaliatory act issue, Section 604 is an exception to the general anti-discrimination provision of Title VI. It does not apply in the first place unless you have a Title VI action, what would otherwise be a Title VI action. The only way that you determine whether an action is a Title VI action is not by looking at the retaliatory act or the manner of the retaliatory act. You must look at the protected activity and whether it is discrimination based on race by a federal funds recipient. The city has said in its appellee brief that this is a textual, but this flows directly from the text. The text says that nothing contained in this subchapter shall be construed to authorize action under this subchapter with respect to an employment practice. The phrase, with respect to any employment practice, is modifying the phrase, action under this subchapter. The focus is on whether this is an action under this subchapter. It simply cannot... So how do we decide what's an employment practice? Sure. So the question whether something is an employment practice, as we have said in our briefs, is whether it is a practice that's regulated by Title VII. But the definition of what is an employment practice is the same whichever way you look at it. So whether you're looking at it in terms of the retaliatory act or you're looking to the underlying protected activity, that doesn't affect the question of what constitutes an employment practice. The only question is what has to be with respect to an employment practice. Does the retaliatory act have to be with respect to an employment practice, or is it the protected activity that makes this an action under this subchapter? This court has understood this question the same way that we have put it forward in the Title VII context. So in the Wimmer case, which we cited in our brief there, the court said there was no Title VII retaliation claim where there was a retaliatory act in response to a complaint of discrimination by co-employees against the general public. And two years later in McManamy v. City of Rochester, this court described that holding as follows. It said it should have been plain to the plaintiff and to any other layperson that his complaint of retaliation for opposing discrimination by co-employees with respect to the general public was not a complaint about an employment practice. So his complaint of retaliation was not a complaint about an employment practice. This case was interestingly leveraging a narrow reading of Title VII with respect to retaliation. Yes. Well, the issue here, again, and this gets to our second bucket of reasons why Section 604 should be read the way that we have suggested, is that Section 604 was designed solely to prevent Title VI from being used as an end run around Title VII. So when Title VII simply does not apply to a given situation, which it does not where the underlying protected activity is not about an employment practice, Title VII's retaliation provision does not cover that scenario, then there is no conflict between Title VI and Title VII. You're not using Title VI as an end run around Title VII. But is there also the, I guess, the inverse argument, which is that they don't want someone to be doubly liable for bringing a Title VII claim and then also being hit with a Title VI claim if the employer just happens to be federally funded? Sure. But again, this is a situation where someone cannot be held liable under Title VII because the complaint is not with respect to an employment practice. Sure. So you said one, but does the other way work as well? Yes. So, for example, if Ms. Bloomberg had complained about an employment practice and DOE had retaliated against her in some way that didn't have to do with her employment, they had retaliated against her, as I said, by contacting Child Protective Services or something, that is something that would be a Title VII retaliation claim. But it would fall within Section 604 and therefore be barred from bringing a Title VI claim for that same action. So our reading harmonizes the two, whereas the district courts and the city's reading creates a giant mismatch that makes Section 604 both over-inclusive and under-inclusive with respect to the way that Congress actually decided to add this to the statute. Otherwise, I mean, that would incentivize plaintiffs to sue under both Title VII and Title VI just to avoid this issue. Right, yes. Plaintiffs wouldn't know which statute to really go under. They would go under both, and we'd have to figure out which of the two applies. But again, here this gets rid of any potential mismatch. Is there some other circuit that has dealt precisely with this issue? There is not that we have found. No other circuit has dealt with this. District courts have dealt with this. So you're asking us to just jump into the ocean alone? Well, there is district court. There are district court rulings on this. As Ms. Meyer pointed out, the Verdi case and the Hickey case within this circuit have both said that non-employment-related discrimination for which someone is then retaliated against via their employment does not fall within Section 604. So there is some district court case law on it. It just hasn't come up to the courts of appeals for whatever reason. People may not have the resources. I mean, it's not the EEOC guidance. So is there some form of government regulatory guidance on this? Not on this precise question, Your Honor. There is a Department of Education regulation about situations where something is in employment practice. But discrimination in that employment practice would tend to perpetuate discrimination against federal funds recipients. So the key example of that would be segregating teachers in a way that then affects the students. In the Caulfield cases, this court held that that does not fall within Section 604. But again, here, the whole point is that the action under this subchapter is not with respect to any employment practice when the underlying protected activity isn't complaining about racial discrimination in an employment practice. I see that I'm over time. So maybe you're not in the best position as the government, as amicus, to respond to this. But the district court did not get to the merits. It just dealt with these preliminary issues, statutory issues. Is there, in your view, a need to get to the merits? Or should we remand that back? If we agree with this argument that you're making on behalf of the government, should we remand it back to the district court? Yes, Your Honor. So we've not taken a position on the merits. And that's, again, for exactly this reason, that there was no discussion of the merits in the district court. We also, of course, don't often take positions on the merits when we're coming in to deal with legal issues. But there also was never a merits determination below in this case. And that's why, in our brief, we suggested that this court remand after first holding that Title VI encompasses retaliation claims in the first place, which is the sort of first threshold issue in this case, and that it reversed. It's not disputed, as I understand it. No, it's not. And I believe it would be hard for the city to have disputed that after Jackson, and especially after this court extended Jackson to 14th Amendment cases in Vega. But this court has not actually held that in a published opinion. And we think that this court should do that so that this is not sort of a hypothetical exercise. Let me just ask you another question that, again, you don't have to answer because it may require some level of speculation. But I was surprised that there is no case or decision, binding decision, on this issue of whether Title VI, the prohibition on intentional discrimination, encompasses retaliation. Why would that be? Is it that it just never comes up, or? It does come up. And there are a number of unpublished decisions from various courts of appeals that have applied Title VI to retaliation. They're just not published decisions. And a lot of that is that courts maybe are rejecting the claims on the merits. And so while they're still saying that there is a Title VI retaliation claim because they're rejecting the claim on the merits, they don't see a reason to publish the decision. But the Fourth Circuit in Peters v. Jenny did hold the same position. He says the Fourth Circuit. Yes. Right, right, right. Okay. Thank you very much. Thank you. We'll hear from the city. Good morning. Good morning, Your Honors. May it please the Court. Jameson Davies for the appellees. This court should affirm the district court's dismissal of the plaintiff's Title VI retaliation claim. The statute bars claims under Title VI with respect to any employment practice unless the sued entity received federal funds to provide employment. Here, Bloomberg lit as a retaliatory investigation by DOE, and our action is plainly with respect to an employment practice and therefore barred by the statute. Whatever the policy merits of a different rule, the text of the statute is clear and bars our claim. And I think getting into some of the discussion earlier about how to harmonize this, it's important to note that this was enacted when Title VI did not have a private cause of action. If you look at the language, it says an action by a department or agency. So it wasn't even really contemplated that you would have individual causes of action here. So I think it risks kind of over-reading the legislative history to try to – Is it improper to import the statutory definition of employment practice from Title VII into Title VI to ferret out the answer to these questions that we've been posing? I don't think it is. I think it's correct because this is when she's suing over an employment practice. Her allegation is that she faced a retaliatory investigation in her employment. She's not suing for any kind of injunctive relief to bring all the sports teams in the school into one area. It's nothing to do with the actual underlying discrimination cause of action. All of her allegations relate to the employment practices that were visited upon her, as she alleges. So I think it's fine to say that this was an employment practice. And the statute says you can't maintain an action with respect to an employment practice unless the primary objective of the federal funding was to provide employment. So she wasn't complaining that she had a racially discriminatory hiring practice. She was claiming that there was inappropriate discrimination with respect to federal funds. Why isn't that enough? I think it's not enough because the text of the statute says that it refers to the action. I think everyone agrees that the action is the lawsuit, and the lawsuit here is with respect to the investigation. So it comes within that. The fact that there could also be with respect to other additional things doesn't necessarily mean that it's not with respect to an employment practice. I think the court might not want to reach this new issue, and I think it doesn't need to because even assuming that they're right, she still has not stated a claim on which relief can be granted after multiple amendments. As all parties agree, she has to allege she engaged in a protected activity, that she was subject to an adverse action, and that her protected activity was the cause of that action. The district court, while it didn't reach the protected activity aspect of Title VI, there's significant overlap with the First Amendment retaliation claim, and the district court did reach that claim and found, quoting from his decision, there's no reference to discrimination or segregation or to comparable terms in her email. A plaintiff's alleged primary concern about racial discrimination and segregation is not and may manifest in the email. So even though the district court didn't reach that under Title VI retaliation, it made clear that it would be the same result because it didn't allege protected action. Isn't the email, I mean it does not allege racial discrimination, but it includes a chart with the racial breakdown of the schools and uses the very racially connected phrase separate but unequal, those types of things? Yes, I think that it raises at most an argument that she was alleging disparate impact, but as Peters v. Jenny tells us, which all parties have relied on, that there is no Title VI cause of action for disparate impact, only for intentional discrimination. And the court there in Note 18 said, a jury issue on intentional discrimination is not created ipso facto by pointing to a policy's disparate effects. And it even went on to say that deliberate indifference to a policy's disparate effects is not sufficient to make out a Title VI claim. And also the context of the email is important as well because she didn't send it to the Civil Rights Office. She sent it to the people who were responsible for dealing with the public school sports leagues, and the response to that was to give the schools more teams. So I think the context also shows that it was intended as advocacy for more sports teams and not as an allegation of intentional discrimination. But even more clearly, as Your Honor pointed out, she can't meet the causation element. The investigation started before any of her alleged protected activity, so there's just no way to make out that the investigations were a response to her protected activity. I think her argument in response to my question is the idea that, yes, the investigations started prior to that, but they're saying that there's no retaliation. There was this thing in the past that they could go back and pull up at this point to justify either extending the investigation or doing what they did subsequently. Right. I think that argument falters a bit on the timeline. The second complaint was in late December of 2016, and then her email was in, I think, January 10th of 2017, and the investigation was open, I think, January 25th. Are we getting a little bit ahead of ourselves? Isn't just the main question we're trying to figure out is whether or not it's barred, and then you can argue when the timing happened and whether or not she'd win. No one's saying she'd win. We're trying to focus on the bar. Isn't that correct? I think that's right, Your Honor. I'm providing this argument for two reasons. One, that the court doesn't have to necessarily reach the question of whether the bar applies. If it agrees with us on the fact that she has no cause of action, you can assume without deciding that the bar does not apply and not have to reach that question. And secondly, I think, as my colleague pointed out, this case has been going on for quite some time. There's been too many complaints. The substance of allegations is not going to change. Everything that is required to decide whether or not she states a valid claim is already in the record. That's not going to change. So that would mean, Mr. Davies, I think what you're saying, but maybe I'm wrong, is ordinarily we can affirm on any basis in the record, but we can't reverse on any basis. Correct, Your Honor. So you're not saying that we can get to the merits and vacate? Correct. Yes, I'm saying that you can assume that the bar does not apply and find that she has not stated a claim on which relief can be granted and still affirm, because, exactly as you said, you can affirm on any basis that's present from the record. And I think here the record is very clear. You wouldn't disagree that, as a prudential matter, we might want to send this back notwithstanding Judge Gardafi's observations in a somewhat related context? I think in the ordinary course, it would be, remand would be the usual option. I think Judge Gardafi is sort of presaging a ruling on an overlapping issue, along with how long this case has been going, along with the fact that she's had two chances to amend. She also elected not to respond to these arguments. She didn't file a reply brief. So she gave up that chance to respond to our points here. So I think it would be, especially given how long this case has gone on, it would be unfortunate if I was here two years from now making these exact same arguments on the exact same record. Just as a housekeeping matter, you do agree, the city does agree, that Title VI's prohibition on intentional discrimination encompasses retaliation. Correct. We don't dispute a retaliation claim. Yes. As I pointed out, only one court has held it. Courts have not reached these issues. I'm not quite sure why, but in 60 years of the Civil Rights Act. Maybe it's because it's self-evident. Who knows? Yes. I'm more surprised by the fact that this issue on the employment practices has not been reached in that amount of time, rather than whether there's a retaliation cause of action. But I'm not sure what exactly the reasons for that would be. And as one other just prudential housekeeping matter as well, I think no one disputes that at the very minimum of the individual defendant should be dismissed, because there's no Title VI liability as to individuals. Does the court have any other questions? We urge affirmance. Thank you, Your Honors. I'm rebuttal. I'd like to say a few things. First of all, Ms. Bloomberg, in her complaint and in her proposed second amended complaint, has pled all of the elements of a retaliation case, which is protected activity, which we allege was her speaking out against discrimination of the students, against the students. She let the school board know and the people within the school system know that she was doing this. An adverse action happened. And we say there's enough of a factual basis to claim a causal connection between them, just temporally even. So when I read the brief of the city, it seemed to me that it was mixing up apples and oranges. Mr. Davies, and I think the government also addressed this, but Mr. Davies takes us back to the text of the statute. And Title VI prohibits actions. This is an action for retaliation. Right. With respect to any employment practice of any employer. And I think he's suggesting that with respect to any employment practice, refers to the action, not to the object of what may have spawned the retaliatory conduct by the employer. What's wrong with that? How do I respond to that? The point is that she does not have an employment practices case. She wasn't complaining about an employment practice. She was complaining about, and her protected activity was concerned for the discrimination against the students, who are the beneficiaries of the federal. No, no, no. I understand that. The argument is that actually this is an employment discrimination case, and so far she's alleging retaliation. No, she could not. No, it's Title VI retaliation. I understand your argument, but there's a text-based argument there. In order to be employment discrimination under Title VII, she would have to be alleging some employment practice that was discriminatory. Yes. Employment practice, not some other practice. She does not have a claim under Title VII and Title VI. Just because she doesn't have a claim under Title VII doesn't answer the question as to whether or not she also has a claim under Title VI. Right? That's not barred by 604. It's not barred by 604, and I can't see a way. It's illogical. It makes no sense to have somebody who complains about and is protected under Title VI and is retaliated against in her employment to say that she wouldn't have a retaliation claim under Title VI, which is precisely what was the issues in Verde and in Hickey versus Myers. All of those cases involved employment situations for the person involved. They lost their deanship or something else bad happened to them for their complaints about students. I think one was a discriminatory admissions policy. Another one was something along that line, but I'm sorry if I misunderstood your question. I'm just suggesting this is an interesting issue. It's a very interesting issue, but this case has never been about employment discrimination. We're not saying that there are some people who are men who were treated differently. It's conceptually not the case. I do want to point out, though, that with respect to her complaint, even if she had a good faith belief that there was disparate impact and that that was a violation of Title VI, even if it ultimately didn't turn out to be the full or all the evidence for disparate treatment or intent, discriminatory intent, she would still be protected. What if... I'm sorry. Go ahead. No, I was talking about if a plaintiff or an employee goes to management and says, I think there's discrimination going on here between so-and-so and so-and-so, and they get charged with retaliation and is retaliated against the fact that her position might have turned out to be wrong, as long as she had a good faith belief. Of course. That's what I was trying to say. But what if, and this is something else, and I'm sorry to belabor this point, but this has got me thinking. What if a plaintiff in a Title VI case claims retaliation for making both a complaint about an employment practice, however you want to describe that, whether you report that from Title VII to O-1, and something that is not, can't be described or characterized as an employment practice, then what? How would we deal with that? So there's a mixed reason for the retaliatory conduct. No, it's from your hypothetical. It sounds like if it was against an employment practice that she claimed discrimination, she'd have a Title VII case, assuming she exhausted her administrative remedies. And if it was not against- But would she be, under Title VI, how would we administer that? Would we cut that up and say you can only claim a Title VI violation of retaliation in connection with the non-employment practice-related conduct? In that context, you'd have to show for Title VI purposes, if it was an employment discrimination issue, that the primary reason for the federal funds was employment. And that's what would- So we'd have to assess the primary- Yeah. If federal funds came to provide a jobs program, and there was discrimination in the jobs program, that might be a situation where the employment- You might have a case of a Title VI employment discrimination where the federal money was specifically for employment, and it would not violate 604. And you don't disagree with Mr. Davies as a housekeeping matter with respect to the individuals? I'm sorry? You don't disagree just as a housekeeping matter with Mr. Davies with respect to the individual defendants? Right. Once the city law was taken out, they should be dismissed. Wonderful. Thank you so much. Thank you. We'll reserve the decision.